RECEIVED

AUG 2 2 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| LARRY BOUDREAUX | CIVIL ACTION NO. 6:11CV0834 |
| VERSUS | JUDGE DOHERTY |
| LA DEPT OF WILDLIFE & FISHERIES ET AL. | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Currently pending before the Court is a motion for partial summary judgment filed by defendants, the State of Louisiana Department of Wildlife and Fisheries ("LDWF"), the Honorable Robert Barham (Secretary of the LDWF), and Donnie Bozeman (agent for the LDWF), whereby defendants seek "an Order from this Court dismissing all claims made by Plaintiff pursuant to the general maritime law, and further ordering that Louisiana state law and jurisprudence will apply to Plaintiff's tort claim against Defendants." [Doc. 31, p.1] By way of their motion, defendants argue plaintiff has failed to show admiralty jurisdiction exists over this matter, and thus, Louisiana state law, as opposed to general maritime law, applies to the claim asserted herein. [Doc. 31-2, pp. 5, 7] In the alternative, defendants argue should this Court determine admiralty jurisdiction is present, "this Court should nonetheless apply Louisiana state law, rather than general maritime law, under the 'maritime but local' doctrine." [Id. at 7] For the following reasons, the motion is DENIED.

I.  **Factual and Procedural Background**

On March 29, 2010, plaintiff Larry Boudreaux was conducting commercial crawfishing

activities out of a commercial fishing skiff[1] in the Atchafalya Basin, in close proximity to East Fork Bayou Des Glaises and Bayou Black in Iberille Parish, Louisiana. [Doc. 1-2, ¶¶ 5, 6, 7] As plaintiff was preparing to return to shore to sell his catch, he was approached by a vessel owned by the LDWF, which was being piloted by LDWF Agent Donnie Bozeman, who was accompanied by LDWF Agent Jerry Stassi. [Doc. 35, p.2] According to plaintiff, "Agent Bozeman approached Plaintiff's boat so swiftly that he could not stop, striking Plaintiff's vessel with his own, causing Plaintiff to fall over and suffer bodily injury."[2] [Id.]

Thereafter, Agent Bozeman issued plaintiff a ticket for conducting commercial fishing operations upon a Louisiana Wildlife Management Area in violation of La. R.S. 56:109, seized plaintiff's catch, and ordered plaintiff to remove his approximately 150 crawfish traps from the area. [Id.; Doc. 1-2, ¶ 12] After several weeks passed without receiving a summons, plaintiff contacted the LDWF and was advised "the Department had become aware that Plaintiff was not on a refuge at the time the citation was issued, but that the charge against him was being 'changed' to a violation of La. R.S. 14:63, Louisiana's criminal trespass law." [Id.] Plaintiff later received a citation in the mail, charging him with criminal trespass upon private lands. [Id.]

Plaintiff originally filed this suit in state court, seeking damages for deprivations of his civil rights under 42 U.S.C. § 1983, et seq., and for negligence under Louisiana state law. [Doc. 1-2, pp. 5-13] Defendants removed the case to the Middle District of Louisiana. [Doc. 1] Thereafter, the matter was transferred to this Court. [Docs. 7, 9] Plaintiff subsequently amended his complaint,

---

[1] The vessel from which plaintiff was conducting his commercial crawfishing activities was a twenty foot commercial skiff, powered by a 115 horsepower outboard motor. [Doc. 35-2, p.3, ¶ 9]

[2] Defendants do not deny "the boats touched," but do deny "any such violent collision as described by Plaintiff." [Doc. 31-2, p. 5]

asserting his personal injury claims fall under federal admiralty jurisdiction, and defendants "are liable to and indebted unto Plaintiff, LARRY BOUDREAUX, under the provisions of La. C.C. Arts. 2315, et seq. as well as under general maritime law." [Doc. 20, pp.1-2 (emphasis in original); Doc. 35, p.3] On July 21, 2014, upon joint motion of the parties, the Court dismissed all civil rights claims, leaving only plaintiff's negligence claim to be resolved. [Id.; Doc. 38] As previously noted, defendant now argues plaintiff's negligence claim asserted under general maritime law must be dismissed, as admiralty jurisdiction does not exist over this claim.

## II.  Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues

on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint . . . . Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (internal quotation marks and citations omitted).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverich County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). To the contrary, in reviewing the evidence, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

### III. Applicable Law & Analysis

28 U.S.C. § 1333 provides in pertinent part: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). "Federal admiralty jurisdiction exists giving a court jurisdiction over a dispute if the tort occurs on navigable waters and the tort bears a significant relationship to traditional maritime activity." *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376-77 (5th Cir. 1988)(citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)). Stated differently, "'a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.'" *Venable v. Louisiana Workers' Compensation Corp.*, 740 F.3d 937, 944 (5th Cir. 2013)(alterations in original)(quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

In this matter, defendants *exclusively* argue plaintiff cannot satisfy the location element of admiralty jurisdiction, and therefore, his negligence claim asserted under general maritime law must

be dismissed.[3] More specifically, defendants argue plaintiff cannot carry his burden of showing the tort occurred on navigable waters, because: (1) the area where the incident occurred is "not subject to seasonal navigability which coincides with any particular commercial purpose"; (2) an "historical analysis of the area indicates that it is not navigable"; and (3) "[t]he area is thick with vegetation which imposes a natural impediment to navigation."[4] [Doc. 31-2, p. 14]

The party seeking to invoke the jurisdiction of a federal court bears the burden of demonstrating subject matter jurisdiction exists. *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1177 (5th Cir. 1984). When the party seeking summary judgment will not bear the burden of proof at trial, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey*, 16 F.3d at 618. Thus, in this matter, if defendants show there is "an absence of evidence" supporting navigability/maritime location, the "burden of demonstrating by competent summary judgment proof that there is an issue of material

---

[3]No argument is made that the tort does not bear a significant relationship to traditional maritime activity.

[4]Defendants have tailored their argument in conformity with this Court's Ruling in *Meche v. Richard*, 2007 WL 634154 (W.D.La.). In *Meche*, this Court wrote:

> [T]he parties have raised the issues of: (1) whether seasonal nonnavigability renders Lake Rycade nonnavigable as a matter of law; (2) whether the actual use of Lake Rycade as part of the highways of commerce or a historical consideration of Lake Rycade's ability or susceptibility of such use should apply to the analysis of Lake Rycade's navigability in fact; and (3) whether impediments to Lake Rycade's access render Lake Rycade nonnavigable.

*Meche* at *2. The Court then discussed each of those issues, raised by the parties, in determining whether admiralty jurisdiction applied to the claims asserted therein. Although helpful to the Court's analysis in this case, the Court must emphasize the foregoing factors do not constitute a jurisprudential test for determining whether admiralty jurisdiction exists over a tort claim, but rather, were merely the arguments made by the parties in *Meche* in support of and against admiralty jurisdiction.

fact warranting trial" with regard to navigability/maritime location shifts to plaintiff. *Id.*

### A. Navigability

Defendants argue "there is a lack of factual support regarding the navigability of the waters wherein the tort in question occurred." [Doc. 31-2, p. 7] The Supreme Court, in *The Daniel Ball*, set forth the definition of "navigable waters" for purposes of admiralty jurisdiction:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. 557, 563 (1870). "This test has subsequently been held to apply to all bodies of water, not just rivers, natural as well as artificial." *Sanders*, 861 F.2d at 1377 (citing *Ex Parte Boyer*, 109 U.S. 629, 632 (1884)). "In short, then, navigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and manmade bodies of water are immaterial."[5] *Id.*

#### 1. Seasonal Navigability

Defendants first argue "Plaintiff has presented no . . . evidence of seasonal commercial

---

[5] According to plaintiff, "Plaintiff and indeed other commercial fishermen can navigate their commercial boats from the area in question through a series of waterways which lead into the Atchafalaya River and in turn to the Gulf of Mexico." [Doc. 35, pp. 4-5] Defendant makes no argument that should this Court find the body of water at issue to be navigable, it nevertheless does not form "a continued highway over which commerce is or may be carried on with other States or foreign countries. . . ." *The Daniel Ball*, 77 U.S. at 563.

navigability with respect to the area in question."[6] [Doc. 31-2, p. 9] Defendants note Mr. Vic Blanchard, who defendants describe as the "land manager for the . . . property where the incident in question occurred," acknowledged the area floods occasionally, "but did not indicate that this flooding coincided with any particular commercial season (such as the crawfish season in the case of Lake Rycade in *Meche*)."[7] [Id.] Defendants further note LDWF Lietenant Stassi testified the area where the incident occurred is "'usually high and dry,' but . . . just so happened to be flooded on the date in question." [Id.] Lt. Stassi further testified there is no predictability as to when the area would flood or be dry.[8] [Id.]

With regard to plaintiff's expert report, defendants argue, "Plaintiff's own expert, Dr. G. Paul Kemp, provided a report in which he set forth certain figures regarding the water level elevations recorded on the Butte La Rose recording gauge over the past several years; however he provided no factual information indicative of the type of commercial seasonal navigability/nonnavigability

---

[6]Again, defendants have tailored this argument to those made in *Meche*. In *Meche*, this Court analyzed, in accordance with the specific arguments of the parties in that matter, whether seasonal nonnavigability rendered Lake Rycade nonnavigable as a matter of law. *Id.* at *2-*3. This Court, "following the analysis set forth in *Sanders*," ultimately "decline[d] defendant's invitation to conclude seasonal nonnavigability renders waters nonnavigable as a matter of law." *Id.* at 3. The Court then "bolster[ed] that opinion by the finding that, in fact, the number of days when the waters are navigable coincide with crawfish season, which is the activity of commercial nature that is the most likely to be used for that area and the time period when the area is most likely to be used as a highway of commerce to move across the Atchafalaya Basin." *Id.*

[7]Plaintiff argues Mr. Blanchard's testimony should be given "no weight," because: (1) he is not an expert in hydrology or commercial fishing; (2) he was not familiar with the Butte Larose River Guage readings relative to the area in question, "even admitting that he did not know what level of water it took for the area to become inundated"; and (3) it was Mr. Blanchard "who pressed criminal charges against Plaintiff for trespassing." [Doc. 35, p. 13 (citing Doc. 35-3, p.32)]

[8]Plaintiff notes: Agent Stassi is not an expert in hydrology or commercial fishing; in his deposition, Agent Stassi admitted he is not a "gauge reader"; and Agent Stassi testified it was "not a surprise" that the area in question was inundated with water at the time of the incident, explaining, "I think it was just a normal rise for that type of year," depending on the "rain we get up north and whatever." [Doc. 35, p. 13 (citing Doc. 35-3, pp. 52-53)]

present in *Meche* regarding Lake Rycade." [Id. at 9-10] From these facts, defendants conclude, "Consequently, unlike in *Meche*, where Lake Rycade exhibited seasonal navigability which coincided with its commercial use as a crawfishing area, the body of water at issue in this case is subject to unpredictable patterns of flooding and drought, which coincide with no particular season of commercial use (such as crawfish season)." [Id. at 10] According to defendants, "this factor should weigh against a finding of navigability in this case." [Id.]

Plaintiff asserts to the extent defendants argue seasonal navigability renders the waters at issue nonnavigable as a matter of law, their motion must fail, as the Fifth Circuit has held to the contrary. [Doc. 35, p. 11] Plaintiff notes in *Sanders*, the Fifth Circuit rejected the argument "that seasonal nonnavigability is sufficient to render waters nonnavigable as a matter of law," and found the fact that the body of water at issue in that case was nonnavigable during certain seasons "is not determinative of federal admiralty jurisdiction." *Sanders*, 861 F.2d at 1377 (noting "both the upper Mississippi River and Saint Lawrence Seaway are navigable waters that are impassable during winter months); *accord Meche* at *3.

In response to defendants' assertion that plaintiff's failure to present "evidence of seasonal commercial navigability which coincides with any particular season" is a factor that "should weigh against a finding of navigability in this case," plaintiff submits his own affidavit, as well as the affidavit of Michael G. Bienvenu, an "expert commercial fisherman." [Doc. 35, p. 12] In plaintiff's affidavit, he notes "with the exception of two to three seasons," he has "commercially fished for crawfish and catfish in and around the area where he was stopped by LDWF . . . since 1985," and he "has been able to access the area . . . on an annual basis, coinciding with commercial crawfishing season, which generally falls between January and July of each year, depending on the relative water

levels. . . ."[9] [Doc. 35-3, pp. 33-34] Mr. Bienvenu testified he is "intimately familiar with the area and the waters where the incident . . . occurred, and has personally commercially fished these waters himself over the years"; numerous commercial fisherman utilize the area in question for commercial crawfishing on an annual basis, coinciding with the commercial crawfishing season in the Atchafalaya Basin; and "commercial crawfishing season generally occurs between the months of January and July of each year, coinciding with the annual ordinary rise of water levels in the Atchafalaya Basin." [Id. at 35-36] According to plaintiff, the foregoing affidavits "clearly indicate[] that the seasonal navigability of this area clearly coincides with commercial crawfishing season. . . ." [Doc. 35, p. 12]

The Court finds the evidence submitted by plaintiff shows there is a genuine dispute with regard to whether the area in question becomes navigable seasonally. Moreover, there is no requirement that a body of water be navigable during a particular commercial season in order for admiralty jurisdiction to be found, as defendants' appear to argue; rather, it has been held sufficient for a finding of navigability that a particular water body is "navigable for a significant portion of time" over a number of years. *Sanders* at 1377.[10] Here, however, not only has plaintiff submitted

---

[9]Defendants assert "the affidavit of Plaintiff is entirely self-serving and not an appropriate basis for a ruling by this Court on summary judgment." [Doc. 40-3, p.3 (citing *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996)]. The Court disagrees. In this matter, plaintiff's affidavit sets forth relevant, admissible, factual information, based upon the affiant's personal knowledge, and is therefore evidence properly considered in the context of summary judgment. Fed. R. Civ. P. 56(c)(1)(a); Fed. R. Evid. 401, 402, and 603. Furthermore, in *BMG*, the "only evidence" submitted by the non-movant was a "conclusory, self-serving statement." *Id.* at 91. Here, not only does the Court find the affidavit submitted by plaintiff to be proper, but plaintiff has submitted other relevant evidence, in addition to plaintiff's affidavit.

[10]In *Sanders*, the Fifth Circuit found as follows:

Placid argues that access into Catahoula Lake is gained over a weir constructed on the Little River at Archie, Louisiana. Placed contends that navigable access into Catahoula Lake over the Little River weir is so infrequent that reasonable minds must conclude that

evidence showing there is a genuine dispute with regard to whether the area in question is navigable for a significant portion of time each year, but has also submitted evidence showing there is a genuine dispute as to whether that portion of time the area in question is navigable coincides with the commercial crawfishing season.

### 2.  Historical Analysis

Defendants, following the analysis in *Meche*, next argue their expert, Dr. George J. Castille, III, performed an historical analysis and "concluded that the area in question was unknown/did not exist as a water body until the canal on which the incident occurred was dredged some time between 1955 and 1959." [Id. at 11] According to Dr. Castille, the vegetation observed in the area at issue can be classified as "Bottomland Hardwoods," which is a type of vegetation frequently found "in areas that are periodically inundated." [Id.] Such vegetation "does not occur in areas that are permanently flooded, such as stream and lake bottoms." [Id.] Dr. Castille determined the site is located within an artificial floodway developed by the U.S. Army Corps of Engineers, and the land within the floodway frequently floods." [Id.] He characterizes the area in question as "overflow land." [Id.] According to Dr. Castille, "There are no natural navigable lakes, streams, or rivers in the vicinity of the incident site and no evidence was found to indicate that any existed in 1812."[11] [Id.] Defendants argue

---

        the lake is nonnavigable. Daily stage level charts indicate, Placid notes, that for the three years preceding the date of the injury, navigable access was possible only six percent of the time in 1982, not at all in 1981 and thirteen percent in 1980. Placid, however, ignores the facts that navigable access was possible twenty-five percent of the time in 1978, fifty-eight percent in 1979, sixty-six percent in 1983, and fifty percent in 1984. Thus, within a broader time frame than the one offered by Placid, the waters were navigable for a significant portion of time.

*Sanders*, 861 F.2d at 1377.

[11]According to defendants, "[I]t is important to remember that historic navigability of rivers, bayous, or streams in Louisiana is almost entirely based upon the status of the waterway in question at

because the evidence indicates this area was nonnavigable at the time Louisiana was admitted to the Union, and because "[a] litany of cases find artificial canals in Louisiana to be nonnavigable because they exist on private land and were created with private funds," there is strong support for "the conclusion that the canal at issue in this case is not navigable."[12] [Id. at 12]

Plaintiff correctly notes defendants have mischaracterized the issue and analysis in *Meche*. The issue in *Meche* was not the navigability/nonnavigability of Lake Rycade in 1812, but rather, whether the Court would look to "'actual use' of the waters as highways for commerce," or look to an "historical consideration of the 'ability or susceptibility for use' of the waters as highways for

---

the time that Louisiana was admitted to the Union in 1812." [Doc. 31-2, p. 12] In support of this statement, defendants cite *Dardur v. Lafourche Realty Co., Inc.*, 985 F.2d 824 (5th Cir. 1993) and *Vermillion Bay Land Co. v. Phillips Petroleum Co.*, 646 So.2d 408 (La. App. 4 Cir. 1994). *Dardur* did not address admiralty jurisdiction or the application of admiralty law. While defendants have provided no citation to the portion of the case upon which they rely, it appears they rely upon that portion addressing whether or not certain property was validly transferred by the state to private owners, or whether such property was inalienable public trust land. Because the court determined the area in question contained no navigable waters in 1812 (the year Louisiana was granted statehood), the state did not acquire any of the property as navigable water bottoms in 1812, and therefore the transfer to private owners was valid. Similarly, *Vermillion Bay* did not address admiralty jurisdiction or the application of admiralty law, but rather, whether a mineral servitude had terminated by ten years of nonuse. The issue turned upon whether certain tracts of land were, or were not contiguous. Whether the tracts were contiguous turned upon whether the body of navigable water separating the tracts was privately owned, or owned by the State of Louisiana. Because the body of water was not navigable in 1812, but was navigable at the time the state sold the property to a private owner, the issue before the court was "whether the prohibition against alienation refers only to beds of waterways that were navigable in 1812 when Louisiana became a State, or to beds of navigable waters at the time of severance from the State." *Id.* at 410. The Louisiana Fourth Circuit held waterways which are navigable at the time of a purported severance by the State are inalienable and insusceptible of private ownership, pursuant to the Louisiana Constitution and the Civil Code, even if those waterways were not navigable in 1812. *Id.* at 411-12. Thus, this Court finds the cited cases are not only irrelevant to the issue at hand, but actually undercut defendants' position, as *Vermillion Bay* certainly does not stand for the proposition "that historic navigability of rivers, bayous, or streams in Louisiana is almost entirely based upon the status of the waterway in question at the time that Louisiana was admitted to the Union in 1812." [Doc. 31-2, p. 12]

[12] In support of this position, defendants rely upon *Dardar, supra* at n. 11, and *Cenac v. Public Access Water Rights Association*, 851 So.2d 1006 (La. 2003). Like *Dardar*, *Cenac* does not address admiralty jurisdiction or the application of admiralty law, but rather, whether a privately owned boat launch and navigable canal were impliedly dedicated to public use and thereby burdened with a servitude of use in favor of the public, pursuant to state law. *Cenac* at 1009.

commerce," in determining navigability. [Doc. 35, pp. 14-15] In *Meche*, the party arguing against navigability asserted the appropriate test was "current navigability" (*i.e.* "actual use"), whereas the party arguing for navigability asserted the appropriate analysis must take into consideration historical navigability. *Meche* at *3. This Court, in part noting the potentially "unstable and undesirable results" rendered by the "current navigability" doctrine, determined the appropriate test was to look to historical navigability. *Meche* at *5-*6. However, no where in *Meche* was the Court concerned with whether or not Lake Rycade was navigable in 1812, as such a consideration generally is only determinative of whether Louisiana acquired ownership of a water body from the United States when it was granted statehood.

Plaintiff additionally submits an affidavit and "stage exceedance chart" prepared by Dr. George Paul Kemp, and the affidavit of plaintiff, which together indicate, "based upon historical river stage data and historical actual use of the area ranging back to 1985, that the waters at issue are susceptible of commercial use by commercial skiffs for on the average, a minimum of 4 to 5 months out of any given year - those 4 to 5 months coinciding with commercial crawfishing season in the Atchafalaya Basin." [Doc. 35, pp. 15-16] In light of the evidence submitted by plaintiff, the Court finds plaintiff has shown there is a genuine dispute as to whether the area in question is navigable.[13]

---

[13]In their reply brief, defendants assert:

Plaintiff contends that historical river stage data is more important to the Court's analysis than historical maps and surveys. Further, Plaintiff suggests that the river stage data provided should cover a broad historical range. However, neither the affidavit nor the report of Dr. Kemp provide any historical data whatsoever, instead only providing the average number of months per year that the water stage at the USGS Butte Larose water gauge exceeds certain elevations. Furthermore, the two charts contained in Dr. Kemp's report provide only limited historical ranges of this data: 1985 to 2012, and 1995 to 2004, respectively. Plaintiff specifically notes that the court in *Sanders*, relied upon data regarding navigable access going back to 1978, but in this case, Plaintiff can only provide some data regarding the Butte Larose water gauge (and not the specific area at

### 3. Impediments to Navigation

Finally, defendants argue "the area in question is not being claimed by the State as a navigable waterway,"[14] and vegetation in the area, "which (unlike in *Meche*) has not been cleared by any state agency, presents a significant obstruction to navigation." [Id. at 13] Again, this argument is made in reference to *Meche*, wherein the Court found Lake Rycade was navigable, in part due to the testimony of an LDWF official who testified the LDWF considered Lake Rycade

---

issue in this case) going back to 1985. This is certainly not sufficient data to sustain Plaintiff's burden of proof on this issue.

[Doc. 40-3, p. 5 (internal citations omitted)] Again, as previously noted, the "historical data" with which the Fifth Circuit was concerned in *Sanders*, and with which this Court was concerned in *Meche*, was the percentage of time over a range of years that the body of water was navigable. *Sanders* at 1377 (analyzing "daily stage level charts" to determine navigability); *Meche* at *3 (analyzing the "daily stage levels and charts of the Butte LaRose gauge on the Atchafalya River which . . . is what the commercial fishermen in the area use to determine accessibility within the basin" over a period of 18.6 years to determine navigability). Dr. Kemp's submission and analysis of the water level elevations over a number of years as recorded on the Butte La Rose recording gauge is exactly the kind of "historical data" with which the Court is concerned in this case. With regard to the period of time covered by Dr. Kemp's analysis, the Court notes it analyzed an 18.6 year period in *Meche*, the Court in *Sanders* looked to data from five years prior to the incident, as well as data two years post-incident. In this matter, plaintiff has provided data from twenty-five years prior to the incident, as well as two years post-incident. Thus, the Court disagrees with defendants that "[t]his is . . . not sufficient data to sustain Plaintiff's burden of proof on this issue."

[14] According to defendants, "the site on which the subject incident occurred is on private property owned by A. Wilbert & Sons, LLC, which is leased for alligator, hunting and crawfishing purposes." [Id. at 14] However, as plaintiff correctly notes, "claims of private ownership or public ownership are of no consequence to the question of maritime 'situs.'" [Doc. 35, pp. 16-17 (citing *McKie v. Diamond Marine Co.*, 204 F.2d 132, 135 (5th Cir. 1953)(admiralty jurisdiction extends to waters, including canals, which are privately owned or claimed); *Gibson v. U.S.*, 166 U.S. 269, 271-72 (1897)("All navigable waters are under the control of the United States for the purpose of regulating and improving navigation, and although the title to the shore and submerged soil is in the various states, and individual owners under them, it is always subject to the servitude in respect of navigation created in favor of the federal government by the constitution"); *In re Boyer*, 109 U.S. 629, 632 (1884)("Navigable water situated as this canal is, used for the purposes for which it is used,-a highway for commerce between ports and places in different states, carried on by vessels such as those in question here,-is public water of the United States, and with the legitimate scope of the admiralty jurisdiction conferred by the constitution and statutes of the United States, even though the canal is wholly artificial, and is wholly within the body of a state, and subject to its ownership and control")]

Page 14 of 18

navigable "and spent substantial financial and other efforts at eliminating or otherwise reducing the growth of vegetation that impeded access to the lake." *Meche* at *8. This Court in *Meche* noted that although "the findings and determinations of the Wildlife and Fisheries Department are not determinative, they are significant from an evidentiary standpoint." *Id.*

In response, plaintiff notes in his deposition, Dr. Castille testified that during his field investigation with Agent Bozeman and defense counsel, he saw what he thinks was a Wildlife & Fisheries boat in the area, and was told by Agent Bozeman the boaters worked for Sherburne (the State Wildlife Management Area in the vicinity) and were spraying herbicides for water lilies. [Id. at 19-20 (citing Doc. 35-3, pp. 17-18] In light of this testimony, plaintiff argues:

> In this case, if the State is indeed expending public funds to maintain navigation in and around the waterways where the incident occurred, this information would be significant from an evidentiary standpoint. Such a finding would also be contrary to Defendant's assertion, "vegetation in question, which (unlike in Meche) has not been cleared by any state agency." At the minimum, if true, it is significant that while the State may not officially claim these waters, it certainly is spending public dollars to maintain them.

[Id. at 20 (internal quotation marks and citations omitted)]

Finally, plaintiff argues:

> The undisputed affidavit of Michael Bienvenu indicates that impediments such as lilies and logs are not a problem for commercial fishing vessels such as that utilized by the Plaintiff at the time of the accident. Defendants make no attempt to assert that the lilies and logs are impediments at all water stages year round.
>
> Moreover, it defies credibility for Defendants to argue that the area is rendered non-navigable by lilies and logs when 1) Defendants' boat on the date of the accident was able to navigate to the site of the accident; and 2) Defendants' boat was able to navigate to the site of the accident in order to bring their expert for a site investigation on May 19 of this year.

[Id. at 22-23] In support, plaintiff cites *The Montello*, 87 U.S. 430, 441-42 (1874)(capability of use for purposes of transportation and commerce determines navigability, not the type of vessel the body

of water will support) and *Sanders*, 861 F.2d at 1378 (a permanent weir, which vessels could not pass over unless the Little River was higher than thirty-six feet above sea level, was "not a constant obstruction to navigation," in light of the percentages of navigable access).

Whether or not the area in question is claimed by the State as a navigable waterway is not determinative of admiralty jurisdiction. Indeed, as this Court noted in *Meche*, the fact that State considered that particular body of water to be navigable was "not determinative" of the issue, but was "significant from an evidentiary standpoint." *Meche* at *8. More importantly, plaintiff has shown there is a genuine dispute with regard to whether vegetation in the area presents a significant obstruction to navigation.

In light of this Court's findings that plaintiff has shown there exists a genuine dispute as to whether the body of water in question is navigable for a significant portion of time yearly, to the extent defendants seek a Ruling from this Court dismissing plaintiff's claim on the basis that admiralty jurisdiction is absent, the motion is denied.

**B.     "Maritime But Local" Doctrine**

In the alternative, defendants contend "even if this Court should find that Plaintiff's tort claim arises under admiralty jurisdiction, this Court should nonetheless apply Louisiana state law, rather than general maritime law, to Plaintiff's claim under the 'maritime but local' doctrine."[15] [Doc. 31-2, p. 15] According to defendants, "the tort claim asserted by Plaintiff in this case (personal injury resulting from an alleged collision) is of a 'garden variety,' with no compelling federal interest

---

[15]As described by the Fifth Circuit, "Application of the substantive law of that state with the most significant relationship to the controversy is appropriate only when the 'maritime but local' doctrine applies; that is, when the matter is maritime in nature but there is neither an applicable federal statute governing the claim nor a perceived need for uniformity of maritime law." *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996).

whatsoever," and thus, the "maritime but local" doctrine should apply. [Id. at 16] In support of this argument, defendants cite *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325 (1973), *Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir. 1983), and *Baggett v. Richardson*, 473 F.2d 863 (5th Cir. 1973).[16]

First, the Court finds the cases cited by defendants do not support application of the "maritime but local" doctrine under the facts of this case. *Askew* involved the question of whether the Florida Oil Spill Prevention and Pollution Control Act - which imposes strict liability for damage incurred by the state or private persons as a result of an oil spill in the state's territorial waters - was preempted by the Admiralty Extension Act; there was no discussion of the "maritime but local" doctrine. In *Palestina*, the Fifth Circuit found admiralty jurisdiction existed over the case, but applied Louisiana law to the question of "whether the owner of a vessel who leaves a key in the ignition may be held accountable to third parties for any harm resulting from unauthorized use," as there was no uniform federal rule. *Palestina*, 701 F.2d at 439. In *Baggett*, the Fifth Circuit affirmed the district court's application of Louisiana law to a maritime tort claim, where the claim involved an assault and battery aboard a vessel moored in state waters, and all parties urged the application of Louisiana law. *Baggett*, 473 F.2d at 864; *see also Baggett v. Richardson*, 342 F.Supp. 1024, 1027 (D.C.La. 1972).

Unlike the cases cited by defendants, this matter involves a collision between two vessels, purportedly upon navigable waters of the United States. In *Foremost Ins. Co. v. Richardson*, the Supreme Court held, "In light of the need for uniform rules governing navigation, the potential impact on maritime commerce when two vessels collide on navigable waters, . . . we hold that a complaint alleging a collision between two vessels on navigable waters properly states a claim within

---

[16]Defendants additionally cite non-binding jurisprudence in support of this position. [Doc. 31-2, pp. 15-16]

the admiralty jurisdiction of the federal courts." *Foremost*, 457 U.S. 668, 677 (1982)(collision of two pleasure boats on the Amite River in Louisiana falls within admiralty jurisdiction of the federal courts). Generally, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). There is a wealth of admiralty law governing collisions between vessels, and there is a need for uniformity with regard to the rules governing navigation. Where there is "a perceived need for uniformity of maritime law," application of the "maritime but local" doctrine is inappropriate. *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996). Thus, the Court finds application of the "maritime but local" doctrine to be inappropriate in this matter.

## IV. Conclusion

In light of the foregoing, defendants' motion for partial summary judgment [Doc. 31] is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this **22** day of August, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE